UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Amelia Gabriel,

       Plaintiff,

v.

Commissioner of Social Security,

       Defendant.
_____

Case No. 2:21-cv-10529-VAR-JJCG
District Judge Victoria A. Roberts
Magistrate Judge Jonathan J.C. Grey

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Amelia Gabriel seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Gabriel's application for disability insurance benefits under the Social Security Act. Gabriel filed a motion for summary judgment (ECF No. 10), the Commissioner filed a response and cross-motion for summary judgment (ECF No. 13), and Gabriel replied (ECF No. 14).

For the foregoing reasons, the Court **RECOMMENDS** that Gabriel's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that, pursuant to sentence four of 42

U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this opinion.

## I. Background

### A. Procedural History

On June 26, 2019, Gabriel filed a Title II application for a period of disability and disability insurance benefits.[1] (Tr. 15.[2]) In her application, the claimant alleged that her disability began on June 21, 2019. *Id.* On January 16, 2020, her application was denied. (Tr. 130–54). Gabriel subsequently requested reconsideration, and the decision was upheld on May 12, 2020. (Tr. 158–71.) Gabriel requested a hearing, and on August 27, 2020, she appeared with counsel before Administrative Law Judge Dennis M. Matulewicz ("ALJ"), who reviewed the case *de novo*. (Tr. 172–73, 33–68.) In a September 9, 2020 decision, the ALJ found that Gabriel was not disabled. (Tr. 15–28). The ALJ's decision became final when the Appeals Council denied review on January 27, 2021. (Tr. 1–6; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004)).

### B. The ALJ's Application of the Disability Framework

Under the Social Security Act, disability insurance benefits and supplemental security income are available only for those who have a "disability."

---

[1] In 2016, Gabriel had applied for a period of disability and disability insurance benefits, but her application was denied on October 21, 2016. (Tr. 69–93.)
[2] The administrative record appears on the docket at ECF No. 8. All references to it are identified as "Tr."

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in the disability insurance benefits context); *see also* 20 C.F.R. § 416.905(a) (definition used in the social security income context).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work in view of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [their] impairments and the fact that [they] are precluded from performing [their] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003.) At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [their] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

Gabriel, born on December 15, 1962, was 56 years old on the alleged disability onset date. (Tr. 214.) She has an associate's degree and past relevant work as a telephone order clerk, checker II,[3] and customer complaint clerk. (Tr. 27.)

The ALJ applied the five-step disability analysis and found at step one that Gabriel had not engaged in substantial gainful activity since the alleged onset date of June 21, 2019. (Tr. 17.) At step two, the ALJ found that Gabriel had the following severe impairments: bilateral carpal tunnel syndrome, status-post left release, osteoarthritis, bilateral hands, morbid obesity, osteoarthritis, bilateral knees, obstructive sleep apnea, and history of lumbar degenerative disc disease.

---

[3] The United States Department of Labor defines "checker II" as an individual who "performs routine checking duties to ensure accuracy of recorded data." *Dictionary of Occupational Titles*, Office of Administrative Law Judges, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02A (1991).

(Tr. 17.) At step three, the ALJ found no evidence that Gabriel's impairments met or medically equaled one of the listings in the regulations. (Tr. 20.) Next, the ALJ determined that Gabriel has the RFC to perform sedentary work with certain limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can never use a ladder, scaffolds, or ropes; occasionally use ramps or stairs, stoop, crouch, kneel, crawl, or balance; who can frequently handle, finger, and feel with the right or left upper extremity; avoid concentrated exposure to dangerous, unprotected machinery or work at unprotected heights; occasionally bend, twist, turn at the waist; and can occasionally push or pull with the right or left upper extremity.

(Tr. 21.) At step four, the ALJ denied Gabriel benefits, finding that Gabriel can perform past relevant work as a telephone order clerk, checker II, and customer complaint work and that this work "does not require the performance of work-related activities precluded by [Gabriel's RFC]." (Tr. 26.) The ALJ further found, in the alternative, that there were jobs in significant numbers in the national economy that Gabriel can perform. (Tr. 27.)

## II. Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the

5

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir.2001) (citation omitted).

### B. Analysis

Gabriel contends that the ALJ's RFC determination regarding Gabriel's hand limitations and non-severe mental impairments is not supported by substantial evidence. (ECF No. 10, PAGEID.722, 728.) The Commissioner counters that the ALJ's decision should be affirmed because the ALJ detailed the record medical evidence as to Gabriel's hand limitations and appropriately weighed medical opinions as to Gabriel's mental limitations. (ECF No. 13, PAGEID.743–744.)

At this stage, Gabriel bears the burden to demonstrate that she has a more restrictive RFC than that found by the ALJ. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999); *see also Jones*, 336 F.3d at 474.

### 1. Hand Conditions

Gabriel first argues that the ALJ erred by "fail[ing] to adequately account for limitations imposed by Gabriel's severe carpal tunnel syndrome and muscle

7

denervation." (ECF No. 10, PAGEID.722.) The Court finds that Gabriel's arguments must fail for failure to specify which additional limitations the ALJ should have included.

In light of Gabriel's bilateral carpal tunnel syndrome, hand osteoarthritis, and residual hand symptoms after Gabriel's carpal tunnel release,[4] the ALJ found that Gabriel has an RFC of "frequent handling, fingering, and feeling and occasional pushing or pulling with the right or left upper extremity." (Tr. 26.) Prior to reaching this conclusion, the ALJ summarized Gabriel's medical history regarding her hand conditions for three pages, discussing relevant medical documentation dated through February 2020 (Tr. 22–24.) The ALJ also discussed Dr. Trinh Nguyen's medical opinion regarding Gabriel's functional limitations. (Tr. 26.) Specifically, the ALJ deemed Dr. Nguyen's opinion to be unpersuasive, finding that Gabriel needed even more "manipulative and pushing/pulling limitations with the upper extremities" than Dr. Nguyen had recommended because of Gabriel's history with carpal tunnel syndrome. *Id.*

Courts reject a claimant's RFC challenge when they fail to "specify any additional work-related functional limitations the ALJ should have, but did not, include in the RFC assessment resulting from his . . . impairments." *Turvey v.*

---

[4] "Carpal tunnel release" is a surgery that treats carpal tunnel syndrome. *Carpal Tunnel Release*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/carpal-tunnel-release.

*Comm'r of Soc. Sec.*, No. 12-12388, 2013 WL 3271194, at *5 (E.D. Mich. May 31, 2013), *report and recommendation adopted*, No. 12-12388, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013); *see also Kaufman v. Comm'r of Soc. Sec.*, No. 19-12904, 2020 WL 7701020, at *17 (E.D. Mich. Sept. 1, 2020), *report and recommendation adopted*, No. 19-12904, 2020 WL 7073169 (E.D. Mich. Dec. 3, 2020) (finding that the plaintiff did not meet his burden to prove he has a more restrictive RFC after arguing that the RFC determination lacked "logical connection"). Gabriel presents several challenges to the ALJ's RFC determination, asserting that the ALJ did not consider evidence of worsening problems with her right hand and that the ALJ improperly relied on Gabriel's daily activities. (ECF No. 10, PAGEID. 723, 727; ECF No. 14, PAGEID. 770–772.) Gabriel, however, never outlines which limitations should have been included in the RFC determination.

Gabriel thus did not meet her burden to demonstrate the need for a more restrictive RFC than found by the ALJ. Accordingly, the Court finds no error in this aspect of the ALJ's analysis.

### 2. Non-Severe Mental Impairments

Gabriel contends that the ALJ's RFC determination is not supported by substantial evidence for (1) failure to adequately explain Dr. Colin King and Dr. Edward Czarnecki's medical opinions and (2) failure to consider the effects of

Gabriel's non-severe mental impairments. (ECF No. 10, PAGEID.728–731.) The Court agrees.

In considering medical opinions, an ALJ will not defer or give any specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a). The most important factors for an ALJ to consider are supportability, or degree to which objective medical evidence supports the opinion, and consistency, or degree to which the opinion is consistent with other evidence. *Id.* at 404.1520c(c). This analysis requires "sufficiently detailed articulation" of application of those factors in which the ALJ must "show [their] work, i.e., to explain in detail *how the factors actually were applied* . . . to each medical source. *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (finding that the ALJ's failure to discuss the supportability and consistency factors warranted remand for further consideration).

Here, the ALJ failed to discuss the supportability and consistency factors with respect to the opinions of two state agency psychology consultants, Dr. King and Dr. Czarnecki. Dr. King opined that Gabriel is "capable of managing semi[-]skilled tasks mentally within a work environment with only routine predictable work stressors." (Tr. 107.) He further opined that Gabriel's diagnosis of anxiety and depression can "produce difficulty concentrating and completing tasks." (Tr. 107.) As to the other opinion, Dr. Czarnecki opined that Gabriel "can carry out

10

detailed, but not complex tasks and instructions" and that her "condition results in some limitations in [her] ability to perform work-related activities." (Tr. 123–24.)

The ALJ provided little to no analysis on these opinions:

> In November 2019, State agency psychology consultant Dr. Colin King opined that the claimant had moderate limitation in concentrating, persisting, or maintaining pace and he adopted the prior ALJ's findings and stated that the claimant is capable of managing semi-skilled tasks mentally within a work environment with only routine predictable work stressors (B3A/8, 12). In April 2020, Dr. Edward Czarnecki opined similarly (B5A/7-8, 12). This opinion is not persuasive as the overall record supports non-severe mental impairments since the alleged disability onset date for the reasons already discussed in paragraph #3 above.

(Tr. 26.) The ALJ neither accepted nor rejected Dr. King's opinion. The ALJ did not assess Dr. King's opinion and only summarized it. *Id.* Additionally, the ALJ did not summarize Dr. Czarnecki's findings separately. The ALJ references his Step Two analysis, but nowhere in that analysis does the ALJ mention either Dr. King or Dr. Czarnecki's opinions. (*Id.*; Tr. 17–20.)

A Step Two analysis "is distinct from the ALJ's obligation to consider the impact of [p]laintiff's non-severe impairments in addition to and in conjunction with [p]laintiff's severe impairments in assessing [p]laintiff's RFC." *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015) (citation omitted). The Commissioner argues that the court in *Katona* remanded the case solely for an ALJ's failure to provide any discussion of non-

11

severe mental impairments in their RFC assessment, asserting that the ALJ here included some discussion.[5] (ECF No. 13, PAGEID.765.) First, like the ALJ here, the ALJ in *Katona* also analyzed the claimant's mental impairments at Step Two. *Katona*, 2015 WL 871617, at *7. Second, the court in *Katona* also stated that ALJs are required to state the basis for their conclusion that a non-severe impairment does not result in any work-related limitations. *Id.* at *6.

Here, the ALJ did not adequately state the basis for his conclusion that Gabriel's non-severe mental impairments generated no work-related limitations. The ALJ thoroughly explained why additional limitations regarding Gabriel's hand conditions, osteoarthritis, back pain, and cane usage are not necessary, but he did not do the same with respect to her mental impairments. (Tr. 24–25) The ALJ cursorily mentions mental functioning when discussing Dr. Rosalynn Moten's opinion, writing that "[t]he overall record supports no more than mild limitation in these areas of functioning for the reasons already discussed in paragraph #3 above." (Tr. 26.) Confusingly, in that cited paragraph, the ALJ highlights his obligation to adequately explain a finding of no mental-related work limitations:

---

[5] The Commissioner further cites *Shamsud-Din* for the proposition that "an ALJ is not required to incorporate mild limitations into an RFC finding, especially where no treating or examining physician assessed functional limitations." (ECF No. 13, PAGEID, 765; *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6–7 (E.D. Mich. July 24, 2017), *report and recommendation adopted*, No. 16-CV-11818, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017). The facts in *Shamsud-Din* are not applicable here. Unlike in *Shamsud-Din*, Dr. King and Dr. Czarnecki evaluated Gabriel's functional assessment and the ALJ did not discuss Dr. King or Dr. Czarnecki's evaluations in his RFC assessment. *Id.*

"The limitations identified . . . are not [an RFC] assessment but are used to rate the severity of mental impairments . . . The mental [RFC] used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." (Tr. 20.) The ALJ never provided a more detailed assessment.

Additionally, the Sixth Circuit requires that courts eliminate conclusory statements when assessing ALJ opinions. *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *3 (6th Cir. Sept. 3, 2021) (citing *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552, 554 (6th Cir. 2020)). Here, when eliminating the ALJ's conclusory statements, the Court finds that the ALJ provided no conclusion regarding Dr. King's opinion and no rationale for his rejection of Dr. Czarnecki's opinion. The ALJ thus did not articulate how the supportability and consistency factors applied to his assessment of Dr. King and Dr. Czarnecki's opinions in contradiction of 20 C.F.R. § 404.1520c(c).

Where an agency fails to adhere to its procedures, courts will not remand for further administrative proceedings unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (citations and quotations omitted). Here, the ALJ's failure to apply the supportability and consistency factors and failure to adequately consider Gabriel's non-severe impairments "gives rise to a distinct—and reversible—error at Step

13

Four, where the ALJ was required to consider the limiting effects of all of [p]laintiff's impairments on her ability to work." *Katona*, 2015 WL 871617, at *5.

The Court cannot find that the ALJ's RFC determination is supported by substantial evidence. On remand, the ALJ should evaluate the medical opinions in accordance with 20 C.F.R. § 404.1520c(c) and non-severe mental impairments in relation to work-related limitations in greater detail.

### III. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that Gabriel's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this opinion.


Dated:   February 1, 2022                    s/**Jonathan J.C. Grey**
                                             Jonathan J.C. Grey
                                             United States Magistrate Judge

**Notice to the Parties About Objections**

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**Certificate of Service**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System on February 1, 2022.

s/ **S. Osorio**
Sandra Osorio
Case Manager
